UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRIAN ZIMMERMAN,

    Plaintiff,

    v.      CAUSE NO.: 3:18-CV-891-TLS

ANDREW SAUL, Commissioner of the
Social Security Administration,

    Defendant.

**OPINION AND ORDER**

    Plaintiff Brian Zimmerman seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits. Plaintiff argues that the Administrative Law Judge (ALJ) made several errors in finding him not disabled. For the reasons set forth below, the Court finds that reversal and remand is required for further proceedings.

**PROCEDURAL BACKGROUND**

    On June 13, 2017, Plaintiff filed an application for disability insurance benefits, alleging disability beginning April 5, 2017. AR 74, 75, 165, ECF No. 11. The claims were denied initially and on reconsideration. *Id*. 106, 111. Plaintiff requested a hearing, which was held before the ALJ on May 18, 2018. *Id*. 39, 114, 129. On July 31, 2015, the ALJ issued a written decision and found Plaintiff not disabled. *Id.* 9–20. On November 2, 2018, Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. Plaintiff filed an opening brief [ECF No. 15], the Commissioner filed a response brief [ECF No. 20], and Plaintiff filed a reply brief [ECF No. 22].

**THE ALJ'S DECISION**

For purposes of disability insurance benefits, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 5, 2017, the alleged onset date. AR 11.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that Plaintiff has the severe impairments of an affective/anxiety disorder and the late effects of an L3-S1 fusion. AR 11.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets

or medically equals a listing, indicating that he considered the Listings under category 1.00 for the musculoskeletal system as well as mental Listings 12.04 and 12.06. AR 12.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can only occasionally climb ramps and stairs, balance, stoop, kneel, and/or crouch. The claimant can tolerate occasional exposure to wetness and humidity, but he can never climb ladders, ropes, or scaffolds, crawl, or work around unprotected heights, around moving mechanical parts, or in vibrations. The claimant is limited to performing simple, routine tasks and simple work-related decisions. The claimant can never interact with the general public but he can occasionally interact with coworkers, but only with brief, incidental interaction with no tandem job tasks requiring cooperation with other workers to complete the task. Moreover, he can tolerate occasional interaction with supervisors. Finally, every thirty minutes, the work must allow the claimant to shift positions, or alternate between sitting/standing for one to two minutes at a time, while remaining on task.

AR 13–14.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that Plaintiff is unable to perform any past relevant work. AR 18.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national economy given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that Plaintiff is not disabled because Plaintiff can perform significant jobs in the national economy of cleaner, clerk, and office

3

helper. AR 18–19. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that

of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, Plaintiff asserts numerous arguments for reversal of the ALJ's decision denying his application for disability benefits. The Court finds that remand is required because the ALJ did not perform a function-by-function assessment of the exertional categories of standing, walking, and lifting before determining that Plaintiff has the residual functional capacity to perform "light work." In this case, that failure prevents the Court from determining whether the ALJ applied the correct standard and produced a decision supported by substantial evidence. *See Jeske v. Saul*, No. 19-1870, 2020 WL 1608847, at *11–12, — F.3d —, — (7th Cir. Apr. 2, 2020). Specifically, the ALJ did not discuss the state agency physician opinion that Plaintiff can perform less than the standing, walking, and lifting requirements for light work—an

opinion that appears to be consistent with other medical opinion evidence and examination findings of record.

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.*

As noted by Plaintiff, Social Security Ruling 96-8p provides that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3; *see also Jeske*, 2020 WL 1608847, at *11, — F.3d at — (discussing Ruling 96-8p's requirement of a function-by-function assessment). Ruling 96-8p provides that "[t]he RFC assessment must address both the

remaining exertional and nonexertional capacities of the individual," and the exertional capacity "defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. The Ruling instructs that each function must be considered separately, giving the example: "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours." *Id.* This separate finding is required even if the final RFC combines the activities, such as walk/stand, lift/carry, or push/pull. *Id*. Importantly, this function-by-function assessment must be conducted *before* the RFC is "expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id*. at *1.

Nevertheless, the Seventh Circuit Court of Appeals recently held that "a decision lacking a seven-part function-by-function written account of the claimant's exertional capacity does *not necessarily* require remand." *Jeske*, 2020 WL 1608847, at * 11, — F.3d at — (emphasis added) (joining "sister courts" *Mascio v. Colvin*, 780 F.3d 632, 635–36 (4th Cir. 2015); *Hendron v. Colvin*, 767 F.3d 951, 956–57 (10th Cir. 2014); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Depover v. Barnhart*, 349 F.3d 563, 567–68 (8th Cir. 2003)). Rather, the court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Id*. (citing 42 U.S.C. § 405(g); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). The ALJ's explanation must enable the court to meaningfully carry out that role. *Id*. As noted by the court in *Jeske*, the function-by-function assessment of the individual's limitations must be conducted first because of the risk that the adjudicator may overlook some of the individual's limitations or restrictions. *See id.* The Ruling explains that overlooking an individual's

limitations or restrictions could "lead to an incorrect use of an exertional category" (e.g. light work) and a finding of "not disabled." *See* SSR 96-8p, 1996 WL 374184, at *4.

In this case, Plaintiff argues that reversal is required because the ALJ failed to conduct a function-by-function analysis of the exertional requirements and only determined that Plaintiff can perform "light work" as defined in 20 C.F.R. § 404.1567(b). The Court agrees. In light of the opinion evidence in this case that supports limitations for less than light work as to standing, walking, and lifting, the ALJ's failure to explicitly address Plaintiff's exertional abilities to stand, walk, and lift means that the Court cannot meaningfully determine whether the ALJ applied the correct standards and whether the RFC is supported by substantial evidence.

The regulatory definition of "light work," cited generally by the ALJ in the RFC, provides:

> (b) Light work. Light work *involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds*. Even though the weight lifted may be very little, *a job is in this category when it requires a good deal of walking or standing*, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.* If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis added). The Social Security Rulings then provide the more specific requirements for light work of "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday" and "lifting no more than 20 pounds at a time with frequent listing or carrying of objects weighing up to 10 pounds." SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983).

In reviewing a disability claim, an ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. § 404.1520c(a), (b). Medical

8

opinions are weighed by considering the following factors: (1) supportability, which means how well the objective medical evidence and supporting explanations presented by a medical source support the opinion; (2) consistency, which means how consistent the medical opinion is with the evidence from other medical sources and nonmedical sources; (3) relationship with the claimant, which considers the length of a treatment relationship, the frequency of examinations, the purpose of a treatment relationship, the extent of a treatment relationship, and whether there is an examining relationship; (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)–(5).

State agency physicians are deemed, by regulation, to be "highly qualified and experts in Social Security disability evaluation," and their opinions must be considered by an administrative law judge in the disability determination process. *See* 20 C.F.R. § 404.1513a(b)(1) (citing 20 C.F.R. §§ 404.1520b, 404.1520c, 404.1527). In this case, state agency reviewing physician Dr. Corcoran opined on March 7, 2018, that Plaintiff could stand or walk for a total of two hours in an eight-hour workday, occasionally lift and/or carry ten pounds, and frequently lift and/or carry less than ten pounds. AR 97. This opinion is inconsistent with the standing, walking, and lifting requirements of light work. *See* SSR 83-10, 1983 WL 31251, at *5–6. Yet, the ALJ did not specifically discuss or weigh Dr. Corcoran's opinion in the decision. The ALJ's generic comment that he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c" does not constitute an evaluation of Dr. Corcoran's opinion or an explanation of the weight given to the opinion. The ALJ's failure to discuss Dr. Corcoran's opinion is not harmless in light of the medical and opinion evidence of record.

First, a consultative physical examination was performed by Dr. Gupta on October 26, 2017, and Dr. Gupta provided the following Medical Source Statement at the conclusion of his report: "Claimant is unable to do work related activities such as sitting, standing, walking or lifting due to pain but able to do carrying and handling objects. Claimant is able to hear, see and speak normally. Claimant is able to understand with normal concentration, memory, and social interactions." AR 735–38. In a thorough paragraph assessing Dr. Gupta's opinion, the ALJ wrote, "Perplexingly, this one-time examining clinician opined that the claimant would be incapable of work that was related to sitting, standing, walking or lifting due to pain; however, the claimant was able to perform all of the activities while being examined." AR 16. In support, the ALJ noted that Plaintiff drove himself to the exam, appeared in no acute painful or anxious distress, and remained cooperative with the unfamiliar doctor and office staff. *Id*. The ALJ further noted Dr. Gupta's examination finding that Plaintiff was tender to palpation along the lumbar spine but that the straight leg test was negative and Plaintiff's upper and lower extremity functionality remained fully intact. *Id*. The ALJ noted that, although Plaintiff's gait was antalgic and that he had difficulty with some postural maneuvers such as stooping and squatting completely, Plaintiff was able to get on and off the examination table without difficulty and without assistance. *Id*. The ALJ noted that, overall, Plaintiff was neurologically and focally intact, was capable of flexing to within 30 degrees of a full normal range of movement, and was able to extend to within ten degrees of a full normal range of movement, which the ALJ noted was consistent with Plaintiff's lumbar fusion surgery. *Id*. The ALJ found Dr. Gupta's opinion inconsistent with these examination findings as well as the examination findings that Plaintiff had full strength and full upper and lower extremity functionality. *Id*. The ALJ concluded that

there were no medical signs or laboratory testing from Dr. Gupta's examination to support the opinion. *Id.* 16–17.

Plaintiff argues that the ALJ erred in weighing Dr. Gupta's opinion. Indeed, the Seventh Circuit Court of Appeals has noted that "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley*, 758 F.3d at 839 (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1)). However, Dr. Gupta's Medical Source Statement provided an extreme opinion of an inability to perform even sedentary work. And, unlike in *Beardsley*, the ALJ in this case provided a thorough and valid explanation for rejecting the opinion.

Plaintiff asserts that the ALJ improperly discounted the opinion because "Dr. Gupta's examination showed multiple abnormalities—tenderness, limited range of motion, *antalgic gait, inability to completely stoop or squat, inability to walk heel to toe and tandemly, difficulty rising from a seated position*, and obesity." Pl.'s Br. 24, ECF No. 15. However, Dr. Gupta did not incorporate those examination findings into the Medical Source Statement, such as by finding a limited range of functioning in certain areas; rather, Dr. Gupta opined that Plaintiff was entirely "unable" to sit, stand, walk, or lift with no connection between the examination findings and the opinion. This lack of supportability was the basis of the ALJ's weighing of Dr. Gupta's opinion. Although the examination findings, such as an antalgic gait, could support a limitation in walking or standing, it was reasonable for the ALJ to find no support for Dr. Gupta's opinion that Plaintiff was "unable" to walk. The ALJ also considered the other regulatory factors in weighing the opinion. The Court finds that, contrary to Plaintiff's argument, the ALJ did not err in weighing Dr. Gupta's opinion.

Nevertheless, since Dr. Gupta offered an opinion for less than sedentary work, the ALJ's analysis of Dr. Gupta's opinion, by itself, does not explain how the ALJ found that Plaintiff can perform the standing, walking, and lifting requirements of light work. And, the ALJ's failure to discuss the state agency reviewing medical opinions leaves an additional gap in the ALJ's analysis of Plaintiff's ability to perform those exertional capacities. On October 30, 2017, at the initial review of Plaintiff's application for benefits, state agency physician Dr. Ruiz reviewed Plaintiff's records, including Dr. Gupta's opinion, and assessed an ability to stand or walk six hours in an eight-hour workday, occasionally lift and/or carry twenty pounds, and frequently lift and/or carry ten pounds. AR 80–82. These limitations are consistent with light work. *See* SSR 83-10, 1983 WL 31251, at *5–6. However, on reconsideration on March 7, 2018, Dr. Corcoran opined that Plaintiff could only stand or walk two hours in an eight-hour workday, occasionally lift and/or carry ten pounds, and frequently lift and/or carry less than ten pounds. AR 97–98. And, as noted above, these limitations are inconsistent with the requirements of light work. *See* SSR 83-10, 1983 31251, at *5–6. Although required by the regulations, the ALJ did not discuss either state agency physician opinion. Moreover, given that Dr. Corcoran's opinion is inconsistent with an RFC for light work, the ALJ's conclusion that the "assessed residual functional capacity is supported by the objective findings, *the State agency medical* and psychological *consultants' opinions*, and the other factors discussed above" is inaccurate. AR 18 (emphasis added).

In addition, certain medical evidence of record appears consistent with Dr. Corcoran's opinion. As noted by Plaintiff, medical records show that he experienced difficulties with his back and lower extremities following his spinal fusion surgery in July 2015 and Plaintiff has continued to complain of pain and functional limitations since that time. For example, on

October 26, 2017, Dr. Gupta found Plaintiff to have paraspinal tenderness, an antalgic gait, an inability to stoop or squat completely, and an inability to walk heel to toe and tandemly. AR 736–37. Although Dr. Gupta's ultimate opinion for less than sedentary work was not credited by the ALJ, the examination findings are not necessarily inconsistent with Dr. Corcoran's opinion.

Also, on April 18, 2017, Dr. Cox-Johnson of Veterans Affairs completed an examination form titled "Back (Thoracolumbar Spine) Conditions." *See* AR 480–89. Therein, Dr. Cox-Johnson opined that Plaintiff would be incapable of work that requires "repetitive lifting/bending/twisting" or "prolonged standing/walking or running." AR 489. The ALJ "was not persuaded by the opinion," reasoning that Dr. Cox-Johnson "noted only tenderness to palpation finding no strength loss, painful distress, gait abnormalities, lower extremity range of movement limitations, or other physical restrictions from which one could equate the preclusion of such work." AR 16. The ALJ further found that "the meaning of no 'prolonged' activities remains undefined, providing little insight into actual residual functional capacity limitations." *Id*. However, the ALJ's reasoning is faulty.

First, the ALJ inaccurately summarized Dr. Cox-Johnson's examination as noting "only tenderness to palpation." AR 16. In fact, Dr. Cox-Johnson found "abnormal or outside of normal range" for "initial range of motion" with limited range on forward flexion, extension, right lateral flexion, and left lateral flexion; pain on exam during forward flexion and extension that caused functional loss; localized tenderness to palpation at L3-5 and corresponding right paraspinal muscles; less movement than normal due to "ankylosis, adhesions, etc." that interferes with sitting and standing; abnormal reflex exam of the bilateral knees and ankles; decreased sensation of the lower right leg/ankle and foot/toes; moderate intermittent pain, mild paresthesias and/or dysethesias, and mild numbness of the bilateral lower extremities, all due to radiculopathy; and

13

bilateral involvement of L2/L3/L4 nerve roots (femoral nerve) and of L4/L5/S1/S2/S3 nerve roots (sciatic nerve). AR 482–87. Dr. Cox-Johnson also noted Plaintiff's reports of constant, achy pain; achy pain bilaterally in the legs with intermittent numbness, tingling, pins and needles sensation, and foot falling asleep sensation bilaterally in the lower extremities; increased pain with prolonged sitting/standing/walking, lifting, bending, and twisting; needing to frequently change positions due to pain; and experiencing flareups of the thoracolumbar spine one to two times a month that can last the entire day and require Plaintiff to remain in bed. AR 482. Thus, Dr. Cox-Johnson's findings were significantly more restrictive than recited by the ALJ. As a result, contrary to the ALJ's reasoning, Dr. Cox-Johnson's examination findings appear to support her opinion that Plaintiff would be incapable of work that requires "repetitive lifting/bending/twisting" or "prolonged standing/walking or running."

      Second, the ALJ used Dr. Cox-Johnson's examination findings to discredit Plaintiff's hearing testimony, writing: "Most importantly, his straight leg raise test (SLR) was negative, failing to corroborate his claims of nerve issues (Hearing Testimony)." AR 15. Although the ALJ is correct that straight leg raise testing was negative, Dr. Cox-Johnson found, as noted above, that Plaintiff had radicular pain or other signs or symptoms due to radiculopathy, including moderate bilateral intermittent pain, mild bilateral paresthesias and/or dysethesias, and mild bilateral numbness. AR 486. Dr. Cox-Johnson found that there was involvement of the femoral nerve roots and the sciatic nerve roots. *Id*. 486–87. These findings appear consistent with Plaintiff's hearing testimony regarding nerve damage. *See id*. 52 ("[T]he back was the main thing, my lower back, and then I had nerve damage. . . . I think I have nerve damage because I still have pain in my lower extremities as well.").

Third, although the ALJ "was not persuaded" by Dr. Cox-Johnson's opinion, the ALJ nevertheless included in the RFC a limitation that Plaintiff be allowed every thirty minutes to shift positions or alternate between sitting and standing for one to two minutes at a time. AR 14. The ALJ does not explain the basis for limitation in the RFC. However, it appears that the limitation is supported by the notation in Dr. Cox-Johnson's report that Plaintiff indicated that he "[h]as to frequently change positions due to pain." AR 482. Thus, it is unclear whether the ALJ relied on certain portions of Dr. Cox-Johnson's report but not others.

Finally, Dr. Cox-Johnson's examination findings appear consistent with those of Dr. Gupta's, and Dr. Cox-Johnson's examination findings as well as her opinion appear consistent with Dr. Corcoran's March 2018 reviewing opinion. Yet, the ALJ did not compare Dr. Cox-Johnson's opinion to any other opinion of record.

This is not a case in which the Court "can tell that the ALJ considered the claimant's ability to perform all seven [exertional] functions" based on other findings by the ALJ in the decision. *Jeske*, 2020 WL 1608847, at *11, — F.3d at —. In this case, there is no other evidence of record discussed by the ALJ that gives the Court insight into the ALJ's assessment of the exertional functions of walking, standing, and lifting. And, medical opinion evidence of record that the ALJ failed to discuss supports greater limitations. Accordingly, remand is required for the ALJ to provide a function-by-function analysis of Plaintiff's exertional capacity for standing, walking, and lifting, including a proper assessment of the medical opinion evidence of record.

Because remand is required on this basis, the Court declines to address most of Plaintiff's remaining arguments, many of which do not provide a basis for remand. Nevertheless, the Court identifies three areas in which the ALJ will have an opportunity to provide a more thorough and/or accurate analysis. First, regarding the assessment of Plaintiff's mental impairments under

15

the Listings at step three of the sequential analysis, the ALJ will have an opportunity to provide a specific analysis of the Paragraph C criteria for Listings 12.04 and 12.06 in light of the structured environment provided by Plaintiff's wife as part of the Veterans Affairs' Caregiver Support Program and any evidence regarding Plaintiff's ability or inability to adjust outside of that supported environment. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04C, 12.06C. Second, it is unclear whether the ALJ correctly understood Plaintiff's military service, specifically his combat service in Iraq, and its impact on both his physical and mental impairments. *See* AR 17 (discussing Ex. 12F). On remand, the ALJ will have an opportunity to reconsider the Plaintiff's military service and specifically his involvement in combat. Third, the ALJ will have an opportunity to explain the weight given to Plaintiff's wife's testimony and statements.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in Plaintiff's Brief [ECF No. 15] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on April 23, 2020.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT
